Robert S. Kreindler, J.
Defendant makes two motions, both of which will be determined by this decision.
In his first motion defendant seeks an order (1) "convening a hearing in camera” to inquire into and to determine the audibility of certain tape recordings made by one Henry V. Agin, M.D. during a psychological examination of defendant; (2) admitting said tape recordings into evidence upon the trial of this matter upon a finding of proper audibility; (3) permittiiig the introduction into evidence of the findings of Henry V. Agin, M.D. as is more fully set forth in his report to the Honorable Guy J. Mangano dated April 17, 1975 insofar as the same may be pertinent to defendant’s defense; and (4) dismissing, the indictment in the interests of justice (CPL 210.20, subd 1; CPL 210.40).
In his second motion defendant requests an order appointing Mr. Nat Laurendi of Certified Lie Detection, Inc. as a special investigator under article 18-B of the County Law to submit the defendant, with his consent, to a polygraph test.
The defendant has been indicted for manslaughter in the first degree. It is alleged that on or about April 2, 1974 the defendant stabbed one Mario Ramirez, also known as Peter Ramos. The People claim that after the stabbing the defendant was chased by two witnesses and was allegedly struck by these two pursuers. It is the defendant’s claim that on the day in question he had gone to his place of employment and taken *911 out the sum of $1,900 which he had saved to purchase a car for his wife and that on his way home he was accosted, assaulted and robbed of the $1,900 by four men, and in the course of struggling with them was struck over the head with a pipe. He further claims to have no recollection of anything thereafter until he awoke in a hospital several days later nor any recollection of having stabbed anyone. It appears that no knife or any other weapon was recovered from the scene of the crime or the defendant’s possession.
In view of the fact that defendant claimed he had no recollection of having stabbed anyone, a request was made for an examination pursuant to CPL article 730 to determine if the defendant was an incapacitated person. Such an examination was conducted in May of 1974 by Dr. Adolph Goldman and Dr. Franklin S. Klaf, both of whom found that defendant did not lack capacity to understand the proceeding against him or assist in his defense and found him fit to proceed to trial.
Subsequently, in September of 1974, a motion was made for an order appointing another psychiatrist to examine the defendant for the purpose of determining if he was an incapacitated person and for sodium pentothal testing. That motion was granted by Mr. Justice Mangano, and Dr. Henry V. Agin was appointed to conduct such examination, which was had on or about April 7, 1975.
It is defendant’s contention that the results of that examination, the contents of the taped interview at that examination, and Dr. Agin’s findings are admissible since it is not sought to use the same to prove the truth or falsity of defendant’s statements while under the influence of sodium pentothal, but rather for the purpose of determining the defendant’s mental state or condition at the alleged commission of the crime. It is claimed that the defendant may have acted under extreme emotional duress, or was rendered temporarily unfit by the blow he suffered to his head, or that he acted in his own defense.
The controlling authority in this area is People v Ford (304 NY 679). In that case, the commission of the crime was conceded, but psychiatric testimony was sought to indicate defendant’s limited mental capacity on the question of whether he was incapable of premeditation or deliberation. The majority of the court held that evidence of an examination by a psychiatrist pertaining to the injection of sodium *912 amytal into defendant’s body was not admissible. (See, also, People v Brownsky, 35 Misc 2d 134; 23 ALR2d 1306 et seq.)
The question of the admissibility of evidence elicited under the influence of sodium pentothal has also been considered by the Federal courts. The case of Lindsey v United States (237 F2d 893) involved a witness who testified for the prosecution and in which on cross-examination contradictory evidence was introduced. To rehabilitate the Government’s witness, a psychiatrist testified on the basis of a complete clinical examination, including psychological tests and sodium pentothal examinations, that he was of the opinion that the witness was telling the truth on her direct examination. The District Court admitted this testimony, not as substantive evidence, but as a prior consistent statement. The Circuit Court of Appeals reversed, saying (p 895), "Although narcoanalysis in general, and the sodium-pentothal interview in particular, may be a useful tool in the psychiatric examination of an individual, the courts have not generally recognized the trustworthiness and reliability of such tests as being sufficiently well established to accord the results the status of competent evidence.” (See, also, 23 ALR2d 2d 1306-1310.)
As the defendant points out, there is law to the contrary in the State of California (People v Cartier, 51 Cal 2d 590; People v Jones, 42 Cal 2d 219).
In view of the authorities and the present state of the law, this court concludes that it must deny the first motion regarding the sodium pentothal examination in its entirety.
The second motion for a polygraph test is an attempt by defendant to establish the truth of his version of the facts by means of said test. The court has been orally advised, by the office of the District Attorney, that it is their contention that the results of any such test would be inadmissible on the trial of this action.
In People v Forte (279 NY 204, 206, mot for rearg den 279 NY 788), the nature of such tests was discussed, and it was held that in order to admit evidence obtained by use of scientific means, it must have been shown that there was "a general scientific recognition that the pathometer [polygraph] possesses efficacy.” In so concluding, the court distinguished such tests from handwriting, fingerprinting and ballistic tests.
The court continued (p 206), "We cannot take judicial notice that this instrument is or is not effective for the purpose of determining the truth.” (See, also, People v Leone, 25 NY2d *913 511; People v Brownsky, 35 Misc 2d 134, supra; 23 ALR2d 1306.)
Defendant is represented by private counsel but has submitted an affidavit claiming present indigency. To order such testing at public expense would result in an expenditure of the taxpayers’ money for no legal or useful purpose. For the reasons above stated, and based upon the District Attorney’s statement in open court that even if the polygraph test results were considered favorable to the defendant, his office would not consider dismissing this indictment, this motion is also, in all respects, denied.